

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2008 Grand Jury

| UNITED STATES OF AMERICA, | ) | CR 08- **CR08-01104** |
|---|---|---|
| Plaintiff, | ) | I N D I C T M E N T |
| v. | ) | [21 U.S.C. §§ 846, 841(a)(1): Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A): Distribution of Methamphetamine; 21 U.S.C. § 841(a)(1), 841(b)(1)(A): Possession with Intent to Distribute Methamphetamine; 18 U.S.C. § 1956(h): Conspiracy to Money Launder; 18 U.S.C. § 1956(a)(2)(A); Money Laundering; 21 U.S.C. § 843(b): Use Of A Communication Facility In Committing A Felony Drug Offense; 18 U.S.C. § 2(a): Aiding and Abetting; 21 U.S.C. § 853: Criminal Forfeiture; 18 U.S.C. § 982: Criminal Forfeiture] |
| FERNANDO LOPEZ JIMENEZ, | ) | |
| aka Arnulfo Vasquez Barajas, | ) | |
| aka Leo, | ) | |
| GUILLERMO HERRERA, | ) | |
| aka Guillermo Tena, | ) | |
| LUCILA BARAJAS, | ) | |
| GUSTAVO LNU, | ) | |
| JUAN DIEGO, | ) | |
| aka El Patron, | ) | |
| JULIAN LNU, | ) | |
| aka Primo, | ) | |
| aka Cousin, | ) | |
| ALEJANDRO DOMINGUEZ-GOMEZ, | ) | |
| aka Alex, | ) | |
| MARIO PINA, | ) | |
| aka Jorge Ascencion Hernandez, | ) | |
| aka Mariano Trujillo, | ) | |
| OLGA LIDIA FLORES, | ) | |
| JESUS JAVIER THOMAS GONZALEZ, | ) | |
| aka Javier, | ) | |
| SERGIO SANCHEZ ARMENTA, | ) | |
| aka Januario, | ) | |
| aka Gordo, | ) | |
| MARTIN VERDUZCO-VILLANUEVA, | ) | |
| ARMANDO GUZMAN GARCIA, | ) | |
| aka Silvestre Garcia, | ) | |

MSL:msl

```
GERARDO GARFIAS,                     )
   aka Gera,                         )
VICTOR MANUEL VILLAR,                )
MARCOS GONZALEZ ROMERO,              )
   aka Marco Romero Gonzalez,        )
   aka Guadalupe Ramirez,            )
   aka Tortas,                       )
   aka Tony,                         )
JUAN LNU,                            )
ISAAC LNU,                           )
RAYMOND CARDENAS,                    )
   aka Jefe,                         )
   aka Ramon,                        )
LUZ MAGANA,                          )
   aka Luz Magana Osegura,           )
   aka Lourdes Magana Oseguera,      )
   aka Tia, and                      )
SAMMY LNU,                           )
                                     )
            Defendants.              )
_____)
```

The Grand Jury charges:

COUNT ONE

[21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)]

A.   OBJECTS OF THE CONSPIRACY

Beginning on an unknown date and continuing until on or about December 6, 2007, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants FERNANDO LOPEZ JIMENEZ, also known as ("aka") Arnulfo Vasquez Barajas, aka Leo ("F. JIMENEZ"), GUILLERMO HERRERA, aka Guillermo Tena ("HERRERA"), LUCILA BARAJAS ("L. BARAJAS"), GUSTAVO last name unknown ("LNU") ("GUSTAVO"), JUAN DIEGO, aka El Patron ("JUAN DIEGO"), JULIAN LNU, aka Primo, aka Cousin ("JULIAN"), ALEJANDRO DOMINGUEZ-GOMEZ, aka Alex ("A. DOMINGUEZ-GOMEZ"), MARIO PINA, aka Jorge Ascencion Hernandez, aka Mariano Trujillo ("PINA"), OLGA LIDIA FLORES ("O. FLORES"), JESUS JAVIER THOMAS GONZALEZ, aka Javier ("GONZALEZ"), SERGIO SANCHEZ ARMENTA,

2

aka Januario, aka Gordo ("ARMENTA"), MARTIN VERDUZCO-VILLANUEVA
("VERDUZCO-VILLANUEVA"), ARMANDO GUZMAN GARCIA, aka Silvestre
Garcia ("GARCIA"), GERARDO GARFIAS, aka Gera ("GARFIAS"), VICTOR
MANUEL VILLAR ("VILLAR"), MARCOS GONZALEZ ROMERO, aka Marco
Romero Gonzalez, aka Guadalupe Ramirez, aka Tortas, aka Tony
("ROMERO"), JUAN LNU ("JUAN LNU"), ISAAC LNU ("ISAAC"), RAYMOND
CARDENAS, aka Jefe, aka Ramon ("CARDENAS"), LUZ MAGANA, aka Luz
Magana Osegura, aka Lourdes Magana Oseguera, aka Tia ("MAGANA"),
and SAMMY LNU ("SAMMY"), unindicted co-conspirator Thomas
Diosdado, aka Hugo Sanchez Cruz ("Diosdado"), and others known
and unknown to the Grand Jury, conspired and agreed with each
other to knowingly and intentionally commit the following
offenses:

1.   To distribute at least 500 grams of a mixture or
substance containing a detectable amount of methamphetamine, or
at least 50 grams of actual methamphetamine, a schedule II
controlled substance, in violation of Title 21, United States
Code, Sections 841(a)(1) and 841(b)(1)(A); and

2.   To possess with intent to distribute at least 500 grams
of a mixture or substance containing a detectable amount of
methamphetamine, or at least 50 grams of actual methamphetamine,
a schedule II controlled substance, in violation of Title 21,
United States Code, Sections 841(a)(1) and 841(b)(1)(A).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
     ACCOMPLISHED

The objects of the conspiracy were to be accomplished in
substance as follows:

1.   Defendants L. BARAJAS and GUSTAVO would sell

3

methamphetamine to defendant F. JIMENEZ.

2.   Defendants L. BARAJAS and GUSTAVO would arrange for multi-pound shipments of methamphetamine to be smuggled into the United States from Mexico and delivered to defendant F. JIMENEZ.

3.   Defendant JUAN DIEGO would sell methamphetamine to defendant HERRERA.

4.   Defendant JUAN DIEGO would arrange for multi-pound shipments of methamphetamine to be smuggled into the United States from Mexico and delivered to defendant HERRERA.

5.   Defendant JULIAN would sell methamphetamine to defendant HERRERA.

6.   Defendant JULIAN would arrange for multi-pound shipments of methamphetamine to be smuggled into the United States from Mexico and delivered to defendant HERRERA.

7.   Defendant F. JIMENEZ would buy multi-pound shipments of methamphetamine from defendants L. BARAJAS and GUSTAVO, and others, and re-sell the methamphetamine to other customers.

8.   Defendant HERRERA would buy multi-pound shipments of methamphetamine from defendants JUAN DIEGO and JULIAN, and others, and re-sell the methamphetamine to other customers.

9.   Defendants F. JIMENEZ and HERRERA would work together to sell methamphetamine to other customers.

10.   Defendant F. JIMENEZ would arrange for the proceeds from his methamphetamine sales to be smuggled out of the United States and delivered to co-conspirators in Mexico who would forward the money to defendants L. BARAJAS and GUSTAVO, and others, so that it could be used to purchase more methamphetamine for defendant F. JIMENEZ.

4

11.   Defendant HERRERA would arrange for the proceeds from his methamphetamine sales to be smuggled out of the United States and delivered to co-conspirators in Mexico who would forward the money to defendants JUAN DIEGO and JULIAN, and others, so that it could be used to purchase more methamphetamine for defendant HERRERA.

12.   Defendant O. FLORES would smuggle methamphetamine proceeds from the United States to Mexico and deliver the proceeds to co-conspirators who would forward the money to defendants JUAN DIEGO and JULIAN, and others, so that it could be used to purchase more methamphetamine for defendant HERRERA.

13.   Defendant O. FLORES would assist defendants HERRERA and F. JIMENEZ in their distribution of methamphetamine by, among other things, receiving deliveries of methamphetamine, hiding methamphetamine, and giving methamphetamine to defendants HERRERA, F. JIMENEZ, and PINA.

14.   Defendant PINA would pick up and deliver methamphetamine and money for defendant F. JIMENEZ.

15.   Defendant A. DOMINGUEZ-GOMEZ would pick up and deliver methamphetamine and money for defendant F. JIMENEZ.

16.   Unindicted co-conspirator Diosdado would pick up and deliver methamphetamine and money for defendant F. JIMENEZ.

17.   Defendant VERDUZCO-VILLANUEVA would deliver methamphetamine to defendant HERRERA and others for defendants JUAN DIEGO and JULIAN.

18.   Defendant VERDUZCO-VILLANUEVA would keep defendant HERRERA informed about the status of shipments of methamphetamine from Mexico.

5

19.   Defendant ARMENTA would pick up and deliver methamphetamine and money for defendants JUAN DIEGO and JULIAN.

20.   Defendant GONZALEZ would smuggle methamphetamine into the United States from Mexico for defendant JULIAN and would deliver it to defendant HERRERA and others.

21.   Defendant JUAN LNU would facilitate the importation of methamphetamine into the United States from Mexico for defendant GUSTAVO.

22.   Defendant JUAN LNU would facilitate the delivery of methamphetamine to defendant F. JIMENEZ and others from defendant GUSTAVO.

23.   Defendant ISAAC would deliver methamphetamine to defendant F. JIMENEZ and others for defendant GUSTAVO.

24.   Defendant GARCIA would buy methamphetamine from defendant F. JIMENEZ and re-sell it to other customers.

25.   Defendant GARFIAS would buy methamphetamine from defendant F. JIMENEZ and re-sell it to other customers.

26.   Defendant VILLAR would buy methamphetamine from defendant F. JIMENEZ and re-sell it to other customers.

27.   Defendant ROMERO would buy methamphetamine from defendant F. JIMENEZ and re-sell it to other customers.

28.   Defendant CARDENAS would buy methamphetamine from defendant F. JIMENEZ and re-sell it to other customers.

29.   Defendant MAGANA would buy methamphetamine from defendant F. JIMENEZ and re-sell it to other customers.

30.   Defendant SAMMY would buy methamphetamine from defendant F. JIMENEZ and re-sell it to other customers.

C.    <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants and others known and unknown to the Grand Jury, committed various overt acts on or about the following dates and at approximately the following times, within the Central District of California and elsewhere, including but not limited to the following:

1.    On March 10, 2006, at 3:00 p.m., using coded language during a telephone conversation, defendant CARDENAS ordered two ounces of methamphetamine from defendant F. JIMENEZ.

2.    On March 10, 2006, at 6:40 p.m., using coded language during a telephone conversation, defendant MAGANA ordered one ounce of methamphetamine from defendant F. JIMENEZ.

3.    On March 11, 2006, at 11:55 a.m., using coded language during a telephone conversation, defendant VILLAR told defendant F. JIMENEZ to unfold the methamphetamine on one end and put it on the table so that defendant VILLAR could add cutting agent to it.

4.    On March 11, 2006, at 12:20 p.m., using coded language during a telephone conversation, defendant MAGANA asked defendant F. JIMENEZ whether the methamphetamine had gone up in price since the last time she had purchased methamphetamine from him and informed defendant F. JIMENEZ that she had $600 now which she could pay him for the one ounce of methamphetamine.

5.    On March 13, 2006, at 10:17 a.m., using coded language during a telephone conversation, defendant CARDENAS ordered two ounces of methamphetamine from defendant F. JIMENEZ and told defendant F. JIMENEZ that he would be able to pay today for some of the methamphetamine he was ordering as well as for some other

narcotics which he had previously obtained from defendant F.
JIMENEZ.

6.   On March 13, 2006, at 12:14 p.m., using coded language
during a telephone conversation, defendant F. JIMENEZ agreed to
deliver three ounces of methamphetamine to defendant ROMERO.

7.   On March 13, 2006, at 5:15 p.m., using coded language
during a telephone conversation, defendant F. JIMENEZ told
defendant VILLAR that he had methamphetamine available for a
price of $9,500 per pound.

8.   On March 13, 2006, at 8:17 p.m., using coded language
during a telephone conversation, defendant GARCIA informed
defendant F. JIMENEZ that he needed one pound of methamphetamine.

9.   On March 14, 2006, at 10:56 a.m., using coded language
during a telephone conversation, defendant F. JIMENEZ informed
defendant ROMERO that he had no methamphetamine available and
that he had given defendant ROMERO the last of the
methamphetamine the previous day.

10.   On March 14, 2006, at 10:59 a.m., using coded language
during a telephone conversation, defendant CARDENAS asked
defendant F. JIMENEZ whether defendant F. JIMENEZ had any
methamphetamine available for one of defendant CARDENAS'
customers.

11.   On March 14, 2006, at 2:23 p.m., using coded language
during a telephone conversation, defendant GARCIA asked defendant
F. JIMENEZ whether defendant F. JIMENEZ had any methamphetamine
available for one of defendant GARCIA's customers.

12.   On March 14, 2006, at 2:23 p.m., using coded language
during a telephone conversation, defendant F. JIMENEZ informed

8

1    defendant GARCIA that the methamphetamine had not arrived yet and
2    that defendant F. JIMENEZ was expecting it to arrive the
3    following morning.

4         13.   On March 15, 2006, at 7:12 p.m., using coded language
5    during a telephone conversation, defendant VILLAR told defendant
6    F. JIMENEZ that defendant VILLAR's customer wanted to purchase
7    methamphetamine but defendant VILLAR wanted to confirm the price.

8         14.   On March 15, 2006, at 7:12 p.m., using coded language
9    during a telephone conversation, defendant F. JIMENEZ told
10   defendant VILLAR that the price was $9,500 per pound and that
11   defendant VILLAR needed to buy it soon because defendant F.
12   JIMENEZ did not have a lot left.

13        15.   On March 16, 2006, at 8:42 a.m., using coded language
14   during a telephone conversation, defendant MAGANA ordered a total
15   of 3/4 ounce of methamphetamine from defendant F. JIMENEZ and
16   informed defendant F. JIMENEZ that 1/4 ounce of the order was for
17   one of defendant MAGANA's customers.

18        16.   On March 16, 2006, at 9:04 a.m., using coded language
19   during a telephone conversation, defendant F. JIMENEZ informed
20   defendant ROMERO that defendant F. JIMENEZ had received a new
21   shipment of methamphetamine.

22        17.   On March 16, 2006, at 9:04 a.m., using coded language
23   during a telephone conversation, defendant ROMERO ordered one
24   ounce of methamphetamine from defendant F. JIMENEZ and gave
25   defendant F. JIMENEZ directions to defendant ROMERO's location.

26        18.   On March 18, 2006 at 11:21 a.m., using coded language
27   during a telephone conversation, defendant ROMERO ordered one
28   ounce of methamphetamine from defendant F. JIMENEZ.

19. On March 18, 2006, at 3:14 p.m., using coded language during a telephone conversation, defendant GARFIAS asked defendant F. JIMENEZ how much cutting agent he had put in the methamphetamine he had sold defendant GARFIAS because the quality was poor.

20. On March 19, 2006, at 10:44 a.m., using coded language during a telephone conversation, defendant PINA told defendant F. JIMENEZ that he was going to deliver some methamphetamine to another location and then would meet defendant F. JIMENEZ.

21. On March 19, 2006, at 10:47 a.m., using coded language during a telephone conversation, defendant ROMERO ordered 1/2 ounce of methamphetamine from defendant F. JIMENEZ.

22. On March 19, 2006, at 12:32 p.m., using coded language during a telephone conversation, defendant SAMMY informed defendant F. JIMENEZ that he had the money he owed defendant F. JIMENEZ for the methamphetamine he had previously purchased from defendant F. JIMENEZ.

23. On March 19, 2006, at 4:06 p.m., using coded language during a telephone conversation, defendant A. DOMINGUEZ-GOMEZ informed defendant GARCIA that he and defendant PINA were on their way to defendant GARCIA's residence to deliver the methamphetamine but were stuck in traffic.

24. On March 19, 2006, at 5:04 p.m., using coded language during a telephone conversation, defendant A. DOMINGUEZ-GOMEZ informed defendant F. JIMENEZ that he and defendant PINA had delivered methamphetamine to and picked up $9,500 from defendant GARCIA.

25. On March 19, 2006, at 5:04 p.m., using coded language

10

during a telephone conversation, defendant A. DOMINGUEZ-GOMEZ
informed defendant F. JIMENEZ that defendant GARCIA had examined
the methamphetamine and was pleased with the quality.

26.  On March 20, 2006, at 7:08 p.m., using coded language
during a telephone conversation, defendant L. BARAJAS told
defendant F. JIMENEZ that defendant F. JIMENEZ should be
receiving two separate shipments of methamphetamine from Mexico,
one shipment containing two pounds and one shipment containing
four or five pounds.

27.  On March 21, 2006, at 9:41 p.m., using coded language
during a telephone conversation, defendant MAGANA asked defendant
F. JIMENEZ if he would deliver 1/2 ounce of methamphetamine
directly to defendant MAGANA's customer and then bring defendant
MAGANA another 1/2 ounce of methamphetamine she had ordered
earlier.

28.  On March 22, 2006, at 8:25 a.m., using coded language
during a telephone conversation, defendant ROMERO ordered 1/4
ounce of methamphetamine from defendant F. JIMENEZ.

29.  On March 22, 2006, at 11:09 a.m., using coded language
during a telephone conversation, defendant GARCIA informed
defendant F. JIMENEZ that defendant GARCIA needed another pound
of methamphetamine but only if it was of high quality like the
methamphetamine he had received on March 19, 2006 from defendant
A. DOMINGUEZ-GOMEZ and not of poor quality like the
methamphetamine he had returned to defendant F. JIMENEZ.

30.  On March 22, 2006, at 11:13 a.m., using coded language
during a telephone conversation, defendant GARCIA asked defendant
F. JIMENEZ to bring only 1/2 pound of methamphetamine because

1  defendant GARCIA did not have enough money to pay for a whole
2  pound.

3      31.  On March 22, 2006, at 1:02 p.m., using coded language
4  during a telephone conversation, defendant F. JIMENEZ informed
5  defendant A. DOMINGUEZ-GOMEZ that defendant A. DOMINGUEZ-GOMEZ
6  should have received $1,150 from an unidentified methamphetamine
7  customer.

8      32.  On March 22, 2006, at 3:45 p.m., using coded language
9  during a telephone conversation, defendant F. JIMENEZ informed
10 defendant GARCIA that he had instructed defendants A. DOMINGUEZ-
11 GOMEZ and PINA to deliver the methamphetamine to defendant
12 GARCIA.

13     33.  On March 22, 2006, at 4:18 p.m., using coded language
14 during a telephone conversation, defendant A. DOMINGUEZ-GOMEZ
15 informed defendant GARCIA that he and defendant PINA were on
16 their way to deliver the methamphetamine to defendant GARCIA and
17 were driving in the car pool lane but the traffic was very heavy.

18     34.  On March 22, 2006, at 5:22 p.m., using coded language
19 during a telephone conversation, defendant GARCIA complained to
20 defendant F. JIMENEZ that defendant GARCIA's customer was
21 complaining about the color of the methamphetamine and defendant
22 GARCIA had already reduced the price he was charging his customer
23 and so was making very little profit off the transaction.

24     35.  On March 22, 2006, at 5:22 p.m., using coded language
25 during a telephone conversation, defendant F. JIMENEZ instructed
26 defendant A. DOMINGUEZ-GOMEZ to give defendant GARCIA $50.

27     36.  On March 22, 2006, at 5:55 p.m., using coded language
28 during a telephone conversation, defendant A. DOMINGUEZ-GOMEZ

informed defendant MAGANA that he would pick up the money she owed defendant F. JIMENEZ for a prior methamphetamine purchase in approximately one-half hour.

37.  On March 23, 2006, at 3:26 p.m., using coded language during a telephone conversation, defendant CARDENAS asked defendant F. JIMENEZ to bring him some methamphetamine on credit because he had a lot of customers asking for methamphetamine and he needed to sell some methamphetamine to raise money fast.

38.  On March 24, 2006, at 2:01 p.m., using coded language during a telephone conversation, defendant ROMERO instructed defendant A. DOMINGUEZ-GOMEZ to meet him at defendant ROMERO's apartment.

39.  On March 24, 2006, at 2:25 p.m., defendants PINA and A. DOMINGUEZ-GOMEZ met defendant ROMERO at a residence in Hawaiian Gardens, California, to pick up money from defendant ROMERO which defendant ROMERO owed defendant F. JIMENEZ for methamphetamine.

40.  On March 24, 2006, at 2:38 p.m., using coded language during a telephone conversation, defendant A. DOMINGUEZ-GOMEZ informed defendant F. JIMENEZ that he and defendant PINA had left defendant ROMERO's residence and were being pulled over by the police.

41.  On March 24, 2006, at 4:28 p.m., using coded language during a telephone conversation, defendant ROMERO asked defendant F. JIMENEZ whether defendants A. DOMINGUEZ-GOMEZ and PINA had been released by the police and whether the police had taken the money he had paid to defendants A. DOMINGUEZ-GOMEZ and PINA.

42.  On March 24, 2006, at 4:28 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told

13

1 | defendant ROMERO that defendants A. DOMINGUEZ-GOMEZ and PINA had
2 | been released and had been able to hide the money before the
3 | police stopped them so the police never found the money.

4 |     43.  On March 27, 2006, at 10:47 a.m., using coded language
5 | during a telephone conversation, defendant ROMERO ordered four
6 | ounces of methamphetamine from defendant F. JIMENEZ.

7 |     44.  On March 27, 2006, at 7:49 p.m., using coded language
8 | during a telephone conversation, defendant F. JIMENEZ agreed to
9 | sell two pounds of methamphetamine to defendant SAMMY the
10 | following day.

11 |     45.  On March 29, 2006, at 1:17 p.m., using coded language
12 | during a telephone conversation, defendant GARCIA ordered one
13 | pound of methamphetamine from defendant F. JIMENEZ.

14 |     46.  On March 29, 2006, at 3:18 p.m., using coded language
15 | during a telephone conversation, defendant ROMERO ordered four
16 | ounces of methamphetamine from defendant A. DOMINGUEZ-GOMEZ.

17 |     47.  On March 29, 2006, at 3:46 p.m., using coded language
18 | during a telephone conversation, defendants GARCIA and A.
19 | DOMINGUEZ-GOMEZ made arrangements to meet so that defendant A.
20 | DOMINGUEZ-GOMEZ could deliver methamphetamine to defendant
21 | GARCIA.

22 |     48.  On March 29, 2006, at 7:20 p.m., using coded language
23 | during a telephone conversation, defendants ROMERO and F. JIMENEZ
24 | agreed to meet at 8:30 p.m. in order for defendant F. JIMENEZ to
25 | deliver four ounces of methamphetamine to defendant ROMERO.

26 |     49.  On March 31, 2006, at 11:09 a.m., using coded language
27 | during a telephone conversation, defendant CARDENAS asked
28 | defendant F. JIMENEZ to bring defendant CARDENAS two ounces of

14

methamphetamine for one of defendant CARDENAS's customers and additional methamphetamine for defendant CARDENAS.

50.   On April 1, 2006, at 8:57 p.m., using coded language during a telephone conversation, defendant SAMMY informed defendant F. JIMENEZ that he had the money he owed defendant F. JIMENEZ for the methamphetamine he had recently purchased from defendant F. JIMENEZ.

51.   On April 1, 2006, at 9:14 p.m., using coded language during a telephone conversation, defendant MAGANA informed defendant F. JIMENEZ that she needed another 3/4 ounce of methamphetamine.

52.   On April 3, 2006, at 3:51 p.m., using coded language during a telephone conversation, defendant A. DOMINGUEZ-GOMEZ informed defendant MAGANA that defendant F. JIMENEZ should have the methamphetamine in approximately two to three more hours.

53.   On April 5, 2006, at 7:29 p.m., using coded language during a telephone conversation, defendant MAGANA informed defendant A. DOMINGUEZ-GOMEZ that one of her customers needed 1/2 ounce of methamphetamine.

54.   On April 6, 2006, at 10:31 a.m., using coded language during a telephone conversation, defendant L. BARAJAS instructed defendant F. JIMENEZ to obtain new phone numbers because an unidentified co-conspirator's home had been searched by the police.

55.   On April 6, 2006, at 1:03 p.m., using coded language during a telephone conversation, defendant CARDENAS told defendant F. JIMENEZ that defendant CARDENAS's customer wanted to return the methamphetamine defendant F. JIMENEZ had previously

provided.

56.   On April 6, 2006, at 1:03 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant CARDENAS to tell defendant CARDENAS's customer that defendant F. JIMENEZ would reduce the price of the methamphetamine by $200 for a total sales price of $1,000.

57.   On April 24, 2006, at 6:01 p.m., using coded language during a telephone conversation, defendant HERRERA informed defendant F. JIMENEZ that defendant HERRERA had gone to Tijuana, Mexico, to bring money to pay for methamphetamine and that he was expecting 15 pounds of methamphetamine to be arriving from Mexico by the following day.

58.   On April 24, 2006, at 6:01 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ informed defendant HERRERA that he had another source who could sell methamphetamine to defendant F. JIMENEZ and defendant HERRERA for $10,500 per pound.

59.   On April 25, 2006, at 12:20 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ informed defendant SAMMY that he was waiting for a methamphetamine delivery and agreed that he would sell defendant SAMMY two pounds of the methamphetamine once it arrived.

60.   On April 25, 2006, at 2:09 p.m., using coded language during a telephone conversation, defendant VILLAR told defendant F. JIMENEZ that defendant VILLAR had a customer who wished to purchase only one ounce of methamphetamine and asked defendant F. JIMENEZ how much he would sell it for.

61.   On April 25, 2006, at 6:20 p.m., using coded language

16

during a telephone conversation, defendant ROMERO complained to
defendant F. JIMENEZ about the quality of methamphetamine
defendant ROMERO had purchased from defendant F. JIMENEZ and
asked defendant F. JIMENEZ to take back one ounce of
methamphetamine that defendant ROMERO could not sell.

62.   On April 25, 2006, at 7:58 p.m., using coded language
during a telephone conversation, defendant HERRERA informed
defendant F. JIMENEZ that the methamphetamine they were expecting
from Mexico should arrive the following day.

63.   On April 25, 2006, at 7:58 p.m., using coded language
during a telephone conversation, defendant HERRERA asked
defendant F. JIMENEZ to get him a gun.

64.   On April 25, 2006, at 8:02 p.m., using coded language
during a telephone conversation, defendant F. JIMENEZ and GARFIAS
discussed the fact that the methamphetamine was expected to
arrive the next day and was expected to be of high quality.

65.   On April 26, 2006, at 2:04 p.m., using coded language
during a telephone conversation, defendant MAGANA ordered one
ounce of methamphetamine from defendant F. JIMENEZ and informed
him that she needed 1/2 ounce now and that she would buy the
other 1/2 ounce the following day because she did not have enough
money for the whole ounce.

66.   On April 26, 2006, at 2:19 p.m., using coded language
during a telephone conversation, defendant HERRERA informed
defendant F. JIMENEZ that the methamphetamine had arrived from
Mexico and asked whether defendant F. JIMENEZ wanted to come pick
it up.

67.   On April 26, 2006, at 2:19 p.m., using coded language

17

during a telephone conversation, defendant F. JIMENEZ asked defendant HERRERA to inform defendant O. FLORES that defendant HERRERA would be coming to their residence so that defendant O. FLORES could give defendant F. JIMENEZ the methamphetamine.

68. On April 26, 2006, at 3:29 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant GARFIAS that the good news was that the methamphetamine had arrived but the bad news was that the price had gone up to $9,700 per pound.

69. On April 26, 2006, at 3:29 p.m., using coded language during a telephone conversation, defendant GARFIAS said he needed to check with his boss and would let defendant F. JIMENEZ know whether he was interested in purchasing any methamphetamine.

70. On April 26, 2006, at 4:58 p.m., using coded language during a telephone conversation, defendant GARFIAS asked defendant F. JIMENEZ whether the methamphetamine was high quality and said that the last methamphetamine he had purchased from defendant F. JIMENEZ was poor quality.

71. On April 26, 2006, at 5:22 p.m., using coded language during a telephone conversation, defendants L. BARAJAS and F. JIMENEZ discussed the price per pound of methamphetamine.

72. On April 26, 2006, at 7:40 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ informed defendant GARFIAS that the methamphetamine had arrived and agreed to meet defendant GARFIAS later to deliver the methamphetamine.

73. On April 27, 2006, at 11:04 a.m., using coded language during a telephone conversation, defendant F. JIMENEZ agreed to deliver six ounces of methamphetamine to defendant ROMERO and

18

informed defendant ROMERO that defendant ROMERO could either return the one ounce of poor-quality methamphetamine defendant ROMERO still had or mix it with high quality methamphetamine defendant F. JIMENEZ was going to deliver.

74.  On April 27, 2006, at 11:33 a.m., using coded language during a telephone conversation, defendant ROMERO informed defendant F. JIMENEZ that defendant ROMERO would give defendant F. JIMENEZ the one ounce of poor quality methamphetamine in exchange for one ounce of the new methamphetamine plus money to pay for the other five ounces of new methamphetamine defendant F. JIMENEZ delivered.

75.  On April 28, 2006, at 1:51 p.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that there were eight or ten pounds of methamphetamine ready to be shipped to defendant F. JIMENEZ but he needed to make at least a partial payment to the courier upon receipt of the methamphetamine.

76.  On April 28, 2006, at 2:06 p.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that ten pounds of methamphetamine was on its way to defendant F. JIMENEZ and that some of the methamphetamine had a light green or brownish color but there were four pounds that came out white in color.

77.  On April 28, 2006, at 2:06 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant L. BARAJAS that he would mix the white methamphetamine with the light green or brownish methamphetamine and offered to send between $60,000 and $80,000 back with the drug courier who

delivered the methamphetamine.

78.   On April 28, 2006, at 5:28 p.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that there might be twelve or thirteen pounds of methamphetamine in the shipment to defendant F. JIMENEZ, rather than ten as she had previously indicated.

79.   On April 28, 2006, at 8:13 p.m., using coded language during a telephone conversation, defendant L. BARAJAS instructed defendant F. JIMENEZ to drive to Santa Ana, California, to pick up the methamphetamine and to give money to the drug courier who delivered the methamphetamine.

80.   On April 29, 2006, at 11:14 a.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant L. BARAJAS that he obtained from the drug courier last night a little more than three pounds of methamphetamine of one color, a little more than three pounds of methamphetamine of a second color, and a little more than three pounds of methamphetamine of a third color.

81.   On April 29, 2006, at 11:14 a.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that the drug courier was supposed to have delivered 13 pounds of methamphetamine and that she would look into the matter further.

82.   On April 29, 2006, at 11:14 a.m., using coded language during a telephone conversation, defendant L. BARAJAS asked defendant F. JIMENEZ whether he had given the drug courier the money that she had instructed defendant F. JIMENEZ to provide.

83.   On April 29, 2006, at 11:22 a.m., using coded language

20

during a telephone conversation, defendant F. JIMENEZ told defendant L. BARAJAS that he had received slightly less than 10 pounds of methamphetamine total from the drug courier last night.

84.  On April 29, 2006, at 11:30 a.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ to check the vehicle very carefully because the missing three pounds of methamphetamine which was supposed to have been delivered last night might be hidden in the engine or in the trunk of the vehicle delivered by the drug courier.

85.  On April 29, 2006, at 11:43 a.m. using coded language during a telephone conversation, defendant F. JIMENEZ agreed to deliver 1 and 1/4 ounces of methamphetamine to defendant MAGANA.

86.  On April 29, 2006, at 1:01 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant L. BARAJAS that he found another two pounds plus 60 grams of the white-colored methamphetamine, bringing the total amount of methamphetamine delivered by the drug courier the previous night to 12 pounds and 60 grams.

87.  On May 1, 2006, at 6:00 p.m., using coded language during a telephone conversation, defendant VILLAR told defendant F. JIMENEZ that defendant VILLAR had a customer who wanted to purchase one pound of methamphetamine and that defendant VILLAR had quoted the customer a price of $10,500 and the customer agreed.

88.  On May 1, 2006, at 6:00 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ agreed to sell one pound of methamphetamine to defendant VILLAR.

89.  On May 1, 2006, at 10:01 p.m., using coded language

21

during a telephone conversation, defendant F. JIMENEZ told
defendant VILLAR that defendant A. DOMINGUEZ-GOMEZ would deliver
the methamphetamine to defendant VILLAR at defendant VILLAR's
apartment.

90.  On May 1, 2006, at 10:17 p.m., using coded language
during a telephone conversation, defendant A. DOMINGUEZ-GOMEZ
asked defendant VILLAR where he lived and told defendant VILLAR
he would be there in a few minutes.

91.  On May 1, 2006, at 10:24 p.m., during a telephone
conversation, defendant VILLAR told defendant A. DOMINGUEZ-GOMEZ
that he was waiting outside of his apartment.

92.  On May 1, 2006, sometime after 10:24 p.m., in Baldwin
Park, California, at the instruction of defendant F. JIMENEZ,
defendant A. DOMINGUEZ-GOMEZ delivered approximately one pound of
methamphetamine to defendant VILLAR, which defendant VILLAR
intended to sell to another person.

93.  On May 2, 2006, at 1:28 p.m., using coded language
during a telephone conversation, defendant HERRERA informed
defendant F. JIMENEZ that ten pounds of methamphetamine had
arrived and agreed to meet defendant F. JIMENEZ in one-half hour.

94.  On May 2, 2006, at 8:36 p.m., using coded language
during a telephone conversation, defendant VILLAR told defendant
F. JIMENEZ that defendant VILLAR's customer thought the price of
the methamphetamine was too expensive.

95.  On May 2, 2006, at 8:36 p.m., using coded language
during a telephone conversation, defendant F. JIMENEZ told
defendant VILLAR to tell defendant VILLAR's customer that the
customer could have the methamphetamine for $10,200.

22

96. On May 2, 2006, at 8:38 p.m., using coded language during a telephone conversation, defendant VILLAR told defendant F. JIMENEZ that defendant VILLAR's customer only wanted to buy 1/2 pound of the methamphetamine.

97. On May 2, 2006, at 9:03 p.m., using coded language during a telephone conversation, defendant VILLAR told defendant F. JIMENEZ that defendant VILLAR's customer would be arriving in approximately 15 minutes and so defendant F. JIMENEZ could send defendant ALEJANDRO DOMINGUEZ-GOMEZ to defendant VILLAR's apartment.

98. On May 2, 2006, at 12:01 p.m., using coded language during a telephone conversation, defendant PINA informed defendant F. JIMENEZ that he was outside of defendant HERRERA's residence but defendant O. FLORES would not open the door and asked defendant F. JIMENEZ for instructions as to how he should complete the methamphetamine transaction.

99. On May 3, 2006, at 12:29 p.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that she had received the money he had sent but it was short and also that the drug couriers were charging too much money, which was cutting into the profits that L. BARAJAS was making from the methamphetamine sales.

100. On May 4, 2006, at 7:49 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ complained to defendant L. BARAJAS that the quality of the most recent shipment he had received from her on April 28, 2006 was poor and that his customers were complaining and so he had to lower the price.

23

101. On May 4, 2006, at 7:49 p.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that she was sending him more methamphetamine which she purchased herself and which should be of better quality than the shipment she previously sent to defendant F. JIMENEZ.

102. On May 6, 2006, at 2:19 p.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that he would be receiving shortly four pounds of methamphetamine which were from defendant L. BARAJAS.

103. On May 8, 2006, at 10:24 a.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that the methamphetamine was in Tijuana, Mexico with the drug courier and that the drug courier was planning on crossing into the United States and should deliver the methamphetamine to defendant F. JIMENEZ by 1:00 p.m. that same day.

104. On May 8, 2006, at 10:24 a.m., using coded language during a telephone conversation, defendant L. BARAJAS instructed defendant F. JIMENEZ to pay the drug courier the $4,000 smuggling fee the drug courier was charging defendant L. BARAJAS and further instructed defendant F. JIMENEZ to send her later the money he owed her for the methamphetamine.

105. On May 8, 2006, at 4:06 p.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that the methamphetamine had arrived in the United States and the drug courier would be calling him shortly to arrange for the delivery.

24

106. On May 8, 2006, at 7:48 p.m., using coded language during a telephone conversation, defendant L. BARAJAS gave defendant F. JIMENEZ the drug courier's phone number and instructed defendant F. JIMENEZ to call the drug courier and to pay the drug courier $3,500 upon receipt of the methamphetamine to cover the drug courier's smuggling fee.

107. On May 9, 2006, at 8:44 a.m., using coded language during a telephone conversation, defendant MAGANA informed defendant F. JIMENEZ that she needed 1/2 ounce of methamphetamine for one customer and another 1/4 ounce of methamphetamine for another customer.

108. On May 9, 2006, at 3:17 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant L. BARAJAS that he had received the methamphetamine she had sent but he had not yet weighed it.

109. On May 9, 2006, at 7:29 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant L. BARAJAS that he had weighed the methamphetamine and that there were three full pounds plus an additional 320 grams and that one of the pounds looked to be of very good quality.

110. On May 10, 2006, at 10:10 a.m., using coded language during a telephone conversation, defendant PINA informed defendant F. JIMENEZ that he had obtained $1,940 in methamphetamine proceeds from an unidentified co-conspirator.

111. On May 10, 2006, at 12:07 p.m., using coded language during a telephone conversation, defendant CARDENAS asked defendant F. JIMENEZ to deliver two ounces of methamphetamine for defendant CARDENAS, one ounce of which defendant CARDENAS

1   intended to sell to a specific customer.

2       112. On May 10, 2006, sometime after 2:00 p.m., defendant A.

3   DOMINGUEZ-GOMEZ delivered two ounces of methamphetamine to

4   defendant CARDENAS for defendant F. JIMENEZ.

5       113. On May 10, 2006, at 4:01 p.m., using coded language

6   during a telephone conversation, defendant MAGANA asked defendant

7   F. JIMENEZ to deliver 1/2 ounce of methamphetamine directly to

8   one of her customers and to deliver an additional 3/4 ounce of

9   methamphetamine to defendant MAGANA.

10      114. On May 11, 2006, at 10:33 a.m., using coded language

11  during a telephone conversation, defendants F. JIMENEZ and PINA

12  discussed what steps needed to be taken that day to facilitate

13  their methamphetamine trafficking activities.

14      115. On May 16, 2006, at 7:59 p.m., using coded language

15  during a telephone conversation, defendant L. BARAJAS instructed

16  defendant F. JIMENEZ to send some of the money he owed her for

17  methamphetamine he had previously purchased because she needed

18  the money to purchase more methamphetamine.

19      116. On May 16, 2006, at 7:59 p.m., using coded language

20  during a telephone conversation, defendant L. BARAJAS informed

21  defendant F. JIMENEZ that she had sent defendant F. JIMENEZ four

22  more pounds of methamphetamine which was on its way to defendant

23  from Mexico.

24      117. On May 18, 2006, at 12:16 p.m., using coded language

25  during a telephone conversation, defendant F. JIMENEZ informed

26  defendant HERRERA that defendant F. JIMENEZ had found another

27  source of methamphetamine who could sell them high quality

28  methamphetamine for $11,300 per pound.

118. On May 18, 2006, at 12:20 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant VILLAR that defendant F. JIMENEZ had a new supply of methamphetamine which had arrived and asked defendant VILLAR whether defendant VILLAR's customer was interested in purchasing some of the methamphetamine.

119. On May 18, 2006, at 12:20 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ agreed to sell methamphetamine to defendant VILLAR's customer for $9,500 per pound and instructed defendant VILLAR to call his customer to arrange the deal.

120. On May 18, 2006, at 4:24 p.m., using coded language during a telephone conversation, defendants F. JIMENEZ and L. BARAJAS discussed that defendant F. JIMENEZ owed defendant L. BARAJAS approximately $41,600 for the three pounds, 320 grams of methamphetamine she had sent him on May 8, 2006.

121. On May 18, 2006, at 4:24 p.m., using coded language during a telephone conversation, defendant L. BARAJAS told defendant F. JIMENEZ that she had additional methamphetamine available but the price had increased to $11,500 per pound because the drug couriers were charging more money to smuggle the drugs into the United States from Mexico.

122. On May 18, 2006, at 4:24 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant L. BARAJAS that he could get methamphetamine from another source for $11,300 per pound and that he had just gotten 15 pounds delivered and was expecting another 20 pounds.

123. On May 19, 2006, at 4:14 p.m., using coded language

27

during a telephone conversation, defendant MAGANA ordered 3/4 ounce of methamphetamine from defendant F. JIMENEZ.

124. On May 20, 2006, at 7:01 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ asked defendant MAGANA whether defendant PINA had come to defendant MAGANA's house to pick up money defendant MAGANA owed defendant F. JIMENEZ for methamphetamine.

125. On June 7, 2006, at 8:22 a.m., using coded language during a telephone conversation, defendant HERRERA informed defendant O. FLORES that defendant VERDUZCO-VILLANUEVA would be arriving later that day to deliver methamphetamine and instructed defendant O. FLORES to have the money ready.

126. On June 7, 2006, at 9:04 a.m., using coded language during a telephone conversation, defendant HERRERA asked defendant VERDUZCO-VILLANUEVA whether defendant VERDUZCO-VILLANUEVA would be delivering methamphetamine to defendant HERRERA later that day and informed defendant VERDUZCO-VILLANUEVA that it would be better to deliver the methamphetamine after the construction workers working at defendant HERRERA's residence had gone home for the day.

127. On June 7, 2006, at 10:29 a.m., using coded language during a telephone conversation, defendant O. FLORES asked defendant HERRERA whether he had been contacted yet regarding the methamphetamine delivery expected for later that day.

128. On June 7, 2006, at 5:06 p.m., using coded language during a telephone conversation, defendant VERDUZCO-VILLANUEVA informed defendant HERRERA that defendant VERDUZCO-VILLANUEVA would deliver five pounds of methamphetamine to defendant HERRERA

28

between 6:30 and 7:00 p.m. that evening and asked when defendant HERRERA would be able to send the money to Mexico for the five pounds of methamphetamine.

129. On June 7, 2006, at 5:06 p.m., using coded language during a telephone conversation, defendant HERRERA informed defendant VERDUZCO-VILLANUEVA that he thought he would have the money for the five pounds of methamphetamine by the following Saturday.

130. On June 7, 2006, at 7:25 p.m., defendant VERDUZCO-VILLANUEVA delivered approximately five pounds of methamphetamine to defendant HERRERA at the residence he shared with defendant O. FLORES in Los Angeles, California.

131. On June 7, 2006, at 7:25 p.m., defendant HERRERA paid defendant VERDUZCO-VILLANUEVA $2,500 as a smuggling fee for delivering the five pounds of methamphetamine.

132. On June 7, 2006, at 7:35 p.m., after he had been stopped by Los Angeles Sheriff's Deputies, defendant VERDUZCO-VILLANUEVA falsely told the Deputies that he brought the $2,500 from Mexico to buy a $5,000 vehicle from defendant HERRERA.

133. On June 8, 2006, at 11:15 a.m., using coded language during a telephone conversation, defendant HERRERA informed defendant JULIAN that defendant HERRERA had received the five pounds of methamphetamine defendant JULIAN had sent and asked when the rest of the methamphetamine would arrive.

134. On June 8, 2006, at 8:03 p.m., using coded language during a telephone conversation, defendant HERRERA instructed defendant O. FLORES to leave the methamphetamine where it was because the following day an unidentified co-conspirator would

29

1  pick it up.

2       135. On June 9, 2006, at 5:17 p.m., using coded language

3  during a telephone conversation, defendant VILLAR told defendant

4  F. JIMENEZ that defendant VILLAR had called the other day looking

5  for methamphetamine, but defendant F. JIMENEZ did not answer his

6  phone.

7       136. On June 9, 2006, at 5:17 p.m., using coded language

8  during a telephone conversation, defendant F. JIMENEZ told

9  defendant VILLAR to tell defendant VILLAR's customer that the

10  price was presently $9,500 per pound but it would be getting

11  cheaper soon.

12       137. On June 10, 2006, at 2:59 p.m., using coded language

13  during a telephone conversation, defendant GARFIAS asked whether

14  defendant F. JIMENEZ could provide any methamphetamine and asked

15  defendant F. JIMENEZ to personally deliver the methamphetamine

16  himself.

17       138. On June 10, 2006, at 2:59 p.m., using coded language

18  during a telephone conversation, defendant F. JIMENEZ said that

19  defendant GARFIAS still owed defendant F. JIMENEZ for 1 and 1/2

20  pounds of methamphetamine.

21       139. On June 11, 2006, at 10:04 a.m., using coded language

22  during a telephone conversation, defendant GUSTAVO informed

23  defendant F. JIMENEZ that the methamphetamine couriers had

24  arrived in defendant F. JIMENEZ's vicinity and were ready to

25  deliver the methamphetamine to defendant F. JIMENEZ.

26       140. On June 11, 2006, at 10:04 a.m., using coded language

27  during a telephone conversation, defendant GUSTAVO offered to

28  sell the methamphetamine to defendant F. JIMENEZ for $11,000 per

pound and told defendant F. JIMENEZ that it was very high quality.

141. On June 11, 2006, at 1:38 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant GUSTAVO that he did not really need any more methamphetamine at present because he had just bought 25 pounds and he still had 12 pounds remaining but he would nevertheless purchase some of the methamphetamine defendant GUSTAVO had sent.

142. On June 11, 2006, at 1:38 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ agreed to buy six packages of methamphetamine from defendant GUSTAVO at $10,900 per pound.

143. On June 11, 2006, at 1:38 p.m., using coded language during a telephone conversation, defendant GUSTAVO informed defendant F. JIMENEZ that the methamphetamine he was sending had the letter "T" written on the packaging and that defendant F. JIMENEZ would be contacted by the drug courier and should pay $4,000 to the drug courier who delivered the methamphetamine to cover the drug courier's fee.

144. On June 11, 2006, at 3:56 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ asked defendant HERRERA to bring defendant F. JIMENEZ three pounds of methamphetamine.

145. On June 11, 2006, at 4:49 p.m., using coded language during a telephone conversation, defendant HERRERA informed defendant F. JIMENEZ that defendant HERRERA was on his way to bring defendant F. JIMENEZ three pounds of methamphetamine and would arrive in approximately 15 minutes.

146. On June 11, 2006, at 10:03 p.m., using coded language during a telephone conversation, defendant GUSTAVO informed defendant F. JIMENEZ that the drug courier would contact defendant F. JIMENEZ either later that evening or the following morning to arrange for the delivery of the methamphetamine to defendant F. JIMENEZ.

147. On June 11, 2006, at 3:25 p.m., using coded language during a telephone conversation, defendant VERDUZCO-VILLANUEVA informed defendant HERRERA that defendant HERRERA would be receiving a shipment of methamphetamine the following day but it would be delivered by someone other than defendant VERDUZCO-VILLANUEVA.

148. On June 11, 2006, at 3:25 p.m., using coded language during a telephone conversation, defendant VERDUZCO-VILLANUEVA advised defendant HERRERA that he believed defendant HERRERA was under surveillance and that defendant HERRERA's phone might be tapped because defendant VERDUZCO-VILLANUEVA had been stopped by the police after leaving defendant HERRERA's residence.

149. On June 11, 2006, at 3:25 p.m., using coded language during a telephone conversation, defendant VERDUZCO-VILLANUEVA informed defendant HERRERA that he lied to the police about the $2,500 which defendant HERRERA had given to defendant VERDUZCO-VILLANUEVA on June 7, 2006.

150. On June 12, 2006, at 8:37 a.m., using coded language during a telephone conversation, defendant F. JIMENEZ informed defendant HERRERA that one of the pounds of methamphetamine which defendant F. JIMENEZ had obtained from defendant JUAN DIEGO was underweight once again by 20 grams and asked defendant HERRERA to

complain about it to defendant JUAN DIEGO.

151. On June 12, 2006, at 11:42 a.m., using coded language during a telephone conversation, defendant HERRERA complained to defendant JUAN DIEGO that several pounds from the last shipment of five pounds of methamphetamine he had received from JUAN DIEGO were underweight and the quality was not good.

152. On June 12, 2006, at 12:00 p.m., using coded language during a telephone conversation, defendant MAGANA ordered 1/2 ounce of methamphetamine from defendant F. JIMENEZ.

153. On June 12, 2006, at 12:56 p.m., using coded language during a telephone conversation, defendant JUAN LNU told defendant F. JIMENEZ that defendant ISAAC would be providing the methamphetamine and gave defendant F. JIMENEZ the phone number for defendant ISAAC.

154. On June 12, 2006, at 12:56 p.m., using coded language during a telephone conversation, defendant JUAN LNU instructed defendant F. JIMENEZ to ask defendant ISAAC for the methamphetamine with the letter "T" written on it.

155. On June 12, 2006, at 2:05 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ asked defendant ISAAC for the methamphetamine with the letter "T" written on it.

156. On June 12, 2006, at 2:13 p.m., using coded language during a telephone conversation, defendant ISAAC instructed defendant F. JIMENEZ to meet defendant ISAAC at a location in Long Beach, California, to obtain the methamphetamine and to call defendant ISAAC when defendant F. JIMENEZ arrived in the area.

157. On June 12, 2006, at 2:34 p.m., using coded language

during a telephone conversation, defendant F. JIMENEZ informed
defendant GUSTAVO that he had been contacted by the drug courier
and was on his way to pick up the drugs.

158. On June 12, 2006, defendant F. JIMENEZ and unindicted
co-conspirator Diosdado drove in tandem in separate cars to Long
Beach, California, to obtain methamphetamine from defendant ISAAC
which defendant F. JIMENEZ intended to sell.

159. On June 12, 2006, at 3:47 p.m., using coded language
during a telephone conversation, defendant ISAAC gave defendant
F. JIMENEZ directions on where defendant ISAAC was waiting and
described himself as wearing a salmon-colored shirt.

160. On June 12, 2006, at 3:51 p.m., using coded language
during a telephone conversation, defendant F. JIMENEZ instructed
unindicted co-conspirator Diosdado to meet the guy wearing the
salmon-colored shirt (defendant ISAAC) and bring defendant ISAAC
into unindicted co-conspirator Diosdado's car so that defendant
ISAAC could provide the methamphetamine.

161. On June 12, 2006, at approximately 3:51 p.m., in Long
Beach, California, defendant ISAAC gave unindicted co-conspirator
Diosdado six packages of a mixture or substance containing a
detectable amount of methamphetamine, each containing the letter
"T" on the packaging, which collectively weighed approximately
3,904 grams and which were 95.3% pure (yielding 3,720 grams of
actual methamphetamine).

162. On June 12, 2006, at 4:50 p.m., using coded language
during a telephone conversation, defendant F. JIMENEZ instructed
defendant SAMMY to help defendant F. JIMENEZ get rid of evidence
of defendant F. JIMENEZ's methamphetamine trafficking because

34

1    unindicted co-conspirator Diosdado had been arrested.

2        163. On June 12, 2006, at 4:50 p.m., using coded language

3    during a telephone conversation, defendant SAMMY agreed to help

4    defendant F. JIMENEZ get rid of evidence of defendant F.

5    JIMENEZ's methamphetamine trafficking.

6        164. On June 12, 2006, at 4:57 p.m., using coded language

7    during a telephone conversation, defendant F. JIMENEZ instructed

8    defendant HERRERA to call defendant O. FLORES and instruct her to

9    get rid of any evidence at defendant HERRERA's house because

10   unindicted co-conspirator Diosdado had been arrested.

11       165. On June 12, 2006, at 5:00 p.m., using coded language

12   during a telephone conversation, defendant HERRERA instructed

13   defendant O. FLORES to remove all of the money, methamphetamine,

14   and other evidence of narcotics trafficking that was at their

15   house and bring it to a co-conspirator's residence.

16       166. On June 12, 2006, at 5:48 p.m., using coded language

17   during a telephone conversation, defendant F. JIMENEZ told

18   defendant ISAAC that unindicted co-conspirator Diosdado had been

19   arrested and warned defendant ISAAC to be careful.

20       167. On June 12, 2006, at 5:51 p.m., using coded language

21   during a telephone conversation, defendant F. JIMENEZ warned

22   defendant GUSTAVO that unindicted co-conspirator Diosdado had

23   been arrested and instructed defendant GUSTAVO to warn other co-

24   conspirators.

25       168. On June 12, 2006, at 6:01 p.m., using coded language

26   during a telephone conversation, defendant GUSTAVO told defendant

27   F. JIMENEZ that defendant GUSTAVO had spoken to defendant ISAAC,

28   and that they believed that the problem leading to the arrest of

1  unindicted co-conspirator Diosdado had originated with defendant
2  F. JIMENEZ.
3      169. On June 13, 2006, at 8:20 a.m., using coded language
4  during a telephone conversation, defendant HERRERA told defendant
5  JULIAN that he still had five pounds of methamphetamine remaining
6  but it was of poor quality.
7      170. On June 13, 2006, at 8:20 a.m., using coded language
8  during a telephone conversation, defendant JULIAN informed
9  defendant HERRERA that defendant JULIAN would instruct defendant
10  ARMENTA to pick up the five pounds of poor quality
11  methamphetamine from defendant HERRERA and instructed defendant
12  HERRERA to send the money for the methamphetamine.
13      171. On June 13, 2006, at 9:24 a.m., using coded language
14  during a telephone conversation, defendant HERRERA instructed
15  defendant O. FLORES to bring $60,000 in drug proceeds to Mexico
16  because co-defendant JULIAN was asking for it and informed
17  defendant O. FLORES that defendant JULIAN was upset about the
18  situation with the methamphetamine.
19      172. On June 13, 2006, at 9:38 a.m., using coded language
20  during a telephone conversation, defendant HERRERA informed an
21  unidentified co-conspirator in Mexico that defendant O. FLORES
22  would be delivering narcotics proceeds to the unidentified co-
23  conspirator the following day.
24      173. On June 13, 2006, at 7:11 p.m., using coded language
25  during a telephone conversation, defendant ARMENTA informed
26  defendant HERRERA that defendant ARMENTA had been instructed to
27  pick up five pounds of methamphetamine from defendant HERRERA.
28      174. On June 13, 2006, at 7:31 p.m., using coded language

36

during a telephone conversation, defendant JUAN DIEGO informed
defendant HERRERA that he had relayed defendant HERRERA's
complaint about the quality of the methamphetamine to an
unidentified co-conspirator from whom defendant JUAN DIEGO had
obtained the methamphetamine and the unidentified co-conspirator
did not sound surprised.

175. On June 13, 2006, at 7:31 p.m., using coded language
during a telephone conversation, defendant HERRERA told defendant
JUAN DIEGO that he and defendant F. JIMENEZ had been selling
methamphetamine together for over a year and had never had a
problem with the methamphetamine they had received from defendant
JUAN DIEGO before but the powdery portion of the methamphetamine
provided recently by defendant JUAN DIEGO was of poor quality.

176. On June 13, 2006, at 7:31 p.m., using coded language
during a telephone conversation, defendants JUAN DIEGO and
HERRERA discussed the fact that defendant VERDUZCO-VILLANUEVA had
been stopped by the police.

177. On June 13, 2006, at 7:31 p.m., using coded language
during a telephone conversation, defendant HERRERA told defendant
JUAN DIEGO that he had removed any evidence of methamphetamine
trafficking from his house after the arrest of a co-conspirator
and seizure of methamphetamine the previous day.

178. On June 13, 2006, at 7:31 p.m., using coded language
during a telephone conversation, defendant HERRERA told defendant
JUAN DIEGO that he was sending his wife (defendant O. FLORES) to
Mexico tomorrow with money for defendant JUAN DIEGO.

179. On June 13, 2006, at 9:11 p.m., using coded language
during a telephone conversation, defendant ARMENTA informed

defendant HERRERA that he was passing Magic Mountain and should be at defendant HERRERA's location shortly to pick up the five pounds of methamphetamine.

180. On June 13, 2006, at 9:48 p.m., using coded language during a telephone conversation, defendant ARMENTA informed defendant HERRERA that he had seen defendant HERRERA's vehicle and would meet as soon as defendant HERRERA parked.

181. On June 13, 2006, sometime after 9:48 p.m., defendant HERRERA gave defendant ARMENTA approximately five pounds of methamphetamine which defendant HERRERA had obtained from defendant JULIAN and which defendant HERRERA had been unable to sell because of its poor quality.

182. On June 14, 2006, at 5:50 a.m., defendant O. FLORES left her residence in Los Angeles, California and began driving to Mexico carrying $60,000 in narcotics proceeds hidden in a container of diaper wipes inside of a diaper bag under the feet of a child.

183. On June 14, 2006, at 6:32 a.m., using coded language during a telephone conversation, defendant O. FLORES informed defendant HERRERA that she was on her way to Mexico to deliver the $60,000 in narcotics proceeds and asked defendant HERRERA whether he had called over to Mexico to let them know that defendant O. FLORES was on her way with the money.

184. On June 14, 2006, at 7:10 a.m., after she was stopped for speeding, defendant O. FLORES told a California Highway Patrol Officer that she did not have any money or drugs in her vehicle.

185. On June 14, 2006, at 8:31 a.m., using coded language

during a telephone conversation, defendant O. FLORES informed defendant HERRERA that she had been stopped by the police for speeding and the police had seized the $60,000 in drug proceeds she was bringing to Mexico but she told the police that the money belonged to her mother and had been obtained for some land.

186. On June 14, 2006, at 8:40 a.m., using coded language during a telephone conversation, defendant HERRERA instructed defendant O. FLORES to call her mother and tell her mother to go claim the $60,000 which had been seized by the California Highway Patrol.

187. On June 15, 2006, at 11:48 a.m., using coded language during a telephone conversation, defendant F. JIMENEZ informed defendant GUSTAVO that there was a problem with the consistency and coloring of some methamphetamine defendant GUSTAVO had provided but defendant F. JIMENEZ could pay an unidentified co-conspirator to fix it.

188. On June 15, 2006, at 11:58 a.m., using coded language during a telephone conversation, defendant MAGANA ordered 2 and 1/2 ounces of methamphetamine from defendant F. JIMENEZ.

189. On June 15, 2006, at 2:35 p.m., using coded language during a telephone conversation, defendant MAGANA told defendant F. JIMENEZ that she had given defendant A. DOMINGUEZ-GOMEZ the money for the methamphetamine.

190. On June 15, 2006, at 3:11 p.m., using coded language during a telephone conversation, defendants F. JIMENEZ and A. DOMINGUEZ-GOMEZ discussed how much methamphetamine they had remaining.

191. On June 16, 2006, at 4:53 p.m., using coded language

39

during a telephone conversation, defendant CARDENAS ordered one
ounce of methamphetamine from defendant F. JIMENEZ which
defendant CARDENAS said he needed to have delivered that same
day.

192. On June 16, 2006, at 5:07 p.m., using coded language
during a telephone conversation, defendant CARDENAS asked
defendant F. JIMENEZ to send the methamphetamine immediately.

193. On June 16, 2006, at 5:21 p.m., using coded language
during a telephone conversation, defendant CARDENAS told
defendant F. JIMENEZ to hurry up and send the methamphetamine
because defendant CARDENAS's customer was waiting.

194. On June 16, 2006, at 5:48 p.m., using coded language
during a telephone conversation, defendant F. JIMENEZ told
defendant CARDENAS that an unidentified co-conspirator was on his
way to defendant CARDENAS to deliver the methamphetamine that
defendant CARDENAS's customer was waiting for.

195. On June 16, 2006, at 6:43 p.m., using coded language
during a telephone conversation, defendant GUSTAVO told defendant
F. JIMENEZ that he did not believe the police were investigating
defendant ISAAC because defendant ISAAC had delivered
methamphetamine both before and after unindicted co-conspirator
Diosdado was arrested and because the police did not seize the
other 60 pounds of methamphetamine that defendant ISAAC had in
his possession but instead seized only the nine pounds of
methamphetamine that defendant ISAAC had given to unindicted co-
conspirator Diosdado.

196. On June 16, 2006, at 8:15 p.m., using coded language
during a telephone conversation, defendant F. JIMENEZ told

40

defendant GUSTAVO the name and booking number under which

unindicted co-conspirator Diosdado had been arrested and booked.

197. On June 17, 2006, at 10:37 a.m., using coded language during a telephone conversation, defendant GUSTAVO told defendant F. JIMENEZ that he had obtained from unindicted co-conspirator Diosdado's attorney and reviewed the reports relating to the arrest of unindicted co-conspirator Diosdado.

198. On June 18, 2006, at 2:49 p.m., using coded language during a telephone conversation, defendant HERRERA informed defendant JULIAN that defendants HERRERA and O. FLORES were trying to obtain documentation from Mexico which they would use to falsely claim that the $60,000 in narcotics proceeds seized by the California Highway Patrol from defendant O. FLORES was from a legitimate source.

199. On July 12, 2006, at 6:47 p.m., using coded language during a telephone conversation, defendant A. DOMINGUEZ-GOMEZ warned defendant F. JIMENEZ that he thought he had been followed earlier by law enforcement near defendant F. JIMENEZ's residence.

200. On July 26, 2006, at 3:41 p.m., using coded language during a telephone conversation, defendant ARMENTA made arrangements to meet defendant HERRERA to pick up or deliver either methamphetamine or methamphetamine proceeds.

201. On August 7, 2006, at 9:08 a.m., using coded language during a telephone conversation, defendant O. FLORES informed defendant HERRERA that she was going to court with her mother to try to obtain the return of the $60,000 in narcotics proceeds which had been seized by the California Highway Patrol on June 14, 2006.

41

202. On September 5, 2006, at 5:23 p.m., using coded language during a telephone conversation, defendant JULIAN informed defendant HERRERA that he would send five pounds of methamphetamine to defendant HERRERA from Mexico the following day.

203. On September 10, 2006, at 2:45 p.m., using coded language during a telephone conversation, defendants HERRERA and JULIAN discussed how much methamphetamine defendant HERRERA had remaining to sell, the prices at which he was selling it, and the quality of the methamphetamine defendant JULIAN had sent.

204. On September 22, 2006, at 6:52 p.m., using coded language during a telephone conversation, defendant JULIAN informed defendant HERRERA that the methamphetamine he was sending to defendant HERRERA was leaving Mexico the next day and instructed defendant HERRERA not to sell the methamphetamine on credit anymore.

205. On September 24, 2006, at 6:16 p.m., using coded language during a telephone conversation, defendant JULIAN told defendant HERRERA that the methamphetamine had left Mexico that morning at 8:00 a.m., and should arrive at defendant HERRERA's residence the following day.

206. On September 25, 2006, at 5:49 p.m., using coded language during a telephone conversation, defendant JULIAN informed defendant HERRERA that he would be receiving a phone call from the methamphetamine couriers.

207. On September 25, 2006, at 8:02 p.m., using coded language during a telephone conversation, defendant GONZALEZ informed defendant HERRERA that the methamphetamine was still in

42

Tijuana, Mexico, but would be in the San Bernardino area by 9:00 a.m., the following morning.

208. On September 25, 2006, at 8:02 p.m., using coded language during a telephone conversation, defendant HERRERA informed defendant GONZALEZ that if the delivery of the methamphetamine must occur in the morning, defendant O. FLORES would be available to receive it.

209. On September 26, 2006, at 11:32 a.m., using coded language during a telephone conversation, defendant F. JIMENEZ informed defendant HERRERA that defendant F. JIMENEZ had a customer who wanted to purchase four pounds of methamphetamine.

210. On September 26, 2006, at 12:31 p.m., using coded language during a telephone conversation, defendant GONZALEZ informed defendant HERRERA that the methamphetamine would be delivered to defendant HERRERA's residence at approximately 2:00 p.m.

211. On September 26, 2006, at 1:42 p.m., using coded language during a telephone conversation, defendant GONZALEZ informed defendant HERRERA that he had arrived at defendant HERRERA's residence with the methamphetamine and would place the methamphetamine in the back yard.

212. On September 26, 2006, at 1:42 p.m., using coded language during a telephone conversation, defendant HERRERA told defendant GONZALEZ that defendant O. FLORES was only three blocks away and would be at his house shortly and defendant HERRERA would tell defendant O. FLORES to get the methamphetamine.

213. On September 26, 2006, at 1:57 p.m., in Los Angeles, California defendant GONZALEZ delivered approximately five pounds

43

of methamphetamine to defendant O. FLORES.

214. On September 26, 2006, at 2:00 p.m., using coded language during a telephone conversation, defendant HERRERA informed defendant F. JIMENEZ that the methamphetamine had arrived and he hoped it was good quality.

215. On September 26, 2006, at 2:17 p.m. using coded language during a telephone conversation, defendant GONZALEZ informed defendant HERRERA that he had left the methamphetamine at defendant HERRERA's residence.

216. On September 26, 2006, at 2:44 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ informed defendant HERRERA that defendant PINA would be arriving at defendant HERRERA's residence to pick up five pounds of methamphetamine.

217. On September 26, 2006, at 3:35 p.m., defendant PINA arrived at defendant HERRERA's residence to pick up methamphetamine for defendant F. JIMENEZ.

218. On September 26, 2006, at 3:42 p.m., defendant HERRERA gave defendant PINA approximately 2,219 grams of a mixture or substance containing a detectable amount of methamphetamine which was 97.2% pure (yielding 2,156 grams of actual methamphetamine).

219. On September 26, 2006, at 3:42 p.m., defendant PINA drove away from defendant HERRERA's residence in a maroon van in possession of approximately 2,219 grams of a mixture or substance containing a detectable amount of methamphetamine.

220. On September 26, 2006, at 3:58 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ told defendant HERRERA that defendant PINA had called defendant

44

F. JIMENEZ to say that after leaving defendant HERRERA's residence with the methamphetamine defendant PINA had detected a lot of law enforcement presence in the area and so had walked away from the maroon van containing the methamphetamine.

221. On September 26, 2006, at 4:03 p.m., after he had abandoned the maroon van containing the approximately 2,219 grams of a mixture or substance containing a detectable amount of methamphetamine he had received from defendant HERRERA defendant PINA lied to police officers about how and why he was in the area.

222. On September 26, 2006, at 4:35 p.m., using coded language during a telephone conversation, defendant HERRERA informed defendant F. JIMENEZ that he was going to try to obtain the methamphetamine from the maroon van that defendant PINA had abandoned.

223. On September 26, 2006, at 5:47 p.m., using coded language during a telephone conversation, defendant HERRERA informed defendant F. JIMENEZ that he had learned that the police were searching his house.

224. On September 26, 2006, at 5:47 p.m., using coded language during a telephone conversation, defendant F. JIMENEZ instructed defendant HERRERA to run away and not go to his house.

225. On September 26, 2006, at 5:55 p.m., using coded language during a telephone conversation, defendant HERRERA told defendant JULIAN that there was one pound of methamphetamine left at his residence but he had instructed defendant O. FLORES to hide the methamphetamine in the back yard.

226. On September 26, 2006, at 6:02 p.m., using coded

language during a telephone conversation, defendant GONZALEZ told defendant HERRERA that he had been detained by the police after leaving defendant HERRERA's residence earlier.

227. On September 26, 2006, at 9:11 p.m., using coded language during a telephone conversation, defendant HERRERA informed defendant JULIAN that he believed that the police investigation leading to the seizure of methamphetamine earlier in the evening from defendant PINA did not originate with either defendant HERRERA or defendant GONZALEZ because defendant HERRERA had sold additional methamphetamine later that afternoon without incident.

228. On September 27, 2006, at 2:15 p.m., using coded language during a telephone conversation, defendants HERRERA and JULIAN discussed the seizure of methamphetamine from the vehicle driven by defendant PINA and the fact that defendant HERRERA could be prosecuted on a narcotics trafficking conspiracy charge.

229. On October 9, 2006, at 10:12 a.m., using coded language during a telephone conversation, defendant F. JIMENEZ informed defendant HERRERA that defendant PINA had been released from custody and had fled to Tijuana, Mexico and warned defendant HERRERA to be careful.

230. On October 9, 2006, at 10:12 a.m., using coded language during a telephone conversation, defendants F. JIMENEZ and HERRERA discussed whether their phones might be tapped.

231. On October 20, 2006, at 8:04 p.m., using coded language during a telephone conversation, defendants HERRERA and JULIAN discussed the status of defendant HERRERA's efforts to obtain the return of the $60,000 in narcotics proceeds seized from defendant

1   O. FLORES on June 14, 2006.

2      232. On November 16, 2006, at 11:50 a.m., in Pomona,

3 California, defendants F. JIMENEZ and A. DOMINGUEZ-GOMEZ

4 possessed approximately 2,212 grams of a mixture or substance

5 containing a detectable amount of methamphetamine which was 96.2%

6 pure, yielding 2,127 grams of actual methamphetamine, with the

7 intent to deliver it to another person.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); 18 U.S.C. § 2(a)]

On or about June 12, 2006, in Los Angeles County, within the Central District of California, defendants GUSTAVO LNU, JUAN LNU, and ISAAC LNU, knowingly and intentionally distributed, and aided, abetted, counseled, commanded, induced and procured the distribution of, at least 50 grams, that is, approximately 3,720 grams, of actual methamphetamine, a schedule II controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); 18 U.S.C. § 2(a)]

On or about June 12, 2006, in Los Angeles County, within the Central District of California, defendant FERNANDO LOPEZ JIMENEZ, also known as ("aka") Arnulfo Vasquez Barajas, aka Leo, knowingly and intentionally possessed with intent to distribute, and aided, abetted, counseled, commanded, induced and procured the possession with intent to distribute, of at least 50 grams, that is, approximately 3,720 grams, of actual methamphetamine, a schedule II controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); 18 U.S.C. § 2(a)]

On or about September 26, 2006, in Los Angeles County, within the Central District of California, defendants FERNANDO LOPEZ JIMENEZ, also known as ("aka") Arnulfo Vasquez Barajas, aka Leo, GUILLERMO HERRERA, aka Guillermo Tena, JULIAN LNU, aka Primo, aka Cousin, MARIO PINA, aka Jorge Ascencion Hernandez, aka Mariano Trujillo, OLGA LIDIA FLORES, and JESUS JAVIER THOMAS GONZALEZ, aka Javier, knowingly and intentionally possessed with intent to distribute, and aided, abetted, counseled, commanded, induced and procured the possession with intent to distribute, of at least 50 grams, that is, approximately 2,156 grams, of actual methamphetamine, a schedule II controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); 18 U.S.C. § 2(a)]

On or about November 16, 2006, in Los Angeles County, within the Central District of California, defendants FERNANDO LOPEZ JIMENEZ, also known as ("aka") Arnulfo Vasquez Barajas, aka Leo and ALEJANDRO DOMINGUEZ-GOMEZ, aka Alex, knowingly and intentionally possessed with intent to distribute, and aided, abetted, counseled, commanded, induced and procured the possession with intent to distribute, of at least 50 grams, that is, approximately 2127 grams, of actual methamphetamine, a schedule II controlled substance.

COUNT SIX

[18 U.S.C. § 1956(h)]

A.   OBJECTS OF THE CONSPIRACY

Beginning on an unknown date and continuing until on or about December 6, 2007, in Los Angeles and Orange Counties, within the Central District of California and elsewhere, defendants FERNANDO LOPEZ JIMENEZ, aka Arnulfo Vasquez Barajas, aka Leo ("F. JIMENEZ"), GUILLERMO HERRERA, also known as ("aka") Guillermo Tena ("HERRERA"), LUCILA BARAJAS ("L. BARAJAS"), GUSTAVO LNU ("GUSTAVO"), JUAN DIEGO, aka El Patron ("JUAN DIEGO"), JULIAN LNU, aka Primo, aka Cousin ("JULIAN"), OLGA LIDIA FLORES ("O. FLORES"), and MARTIN VERDUZCO-VILLANUEVA ("VERDUZCO-VILLANUEVA"), and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed with each other to commit the following offenses:

1.   Knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, which property was, in fact, the proceeds of specified unlawful activity, that is, illegal narcotics trafficking, to conduct and attempt to conduct financial transactions with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

2.   Knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, which property was, in fact, the proceeds of specified unlawful activity, that is, illegal narcotics trafficking, to conduct and attempt to conduct financial transactions knowing

that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of said proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

3. Knowing that property involved in financial transactions represented the proceeds of some form of unlawful activity, which property was, in fact, the proceeds of specified unlawful activity, that is, illegal narcotics trafficking, to conduct and attempt to conduct financial transactions knowing that the transactions were designed in whole or in part to avoid transaction reporting requirements under Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii);

4. To transport, transmit, and transfer, and attempt to transport, transmit, and transfer monetary instruments or funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of illegal narcotics trafficking, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

5. To transport, transmit, and transfer, and attempt to transport, transmit, and transfer monetary instruments or funds from a place in the United States to or through a place outside the United States, knowing that the monetary instruments or funds involved in the transportation, transmission, or transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer was designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of

1  specified unlawful activity, in violation of Title 18, United
2  States Code, Section 1956(a)(2)(B)(i); and
3       6.    To transport, transmit, and transfer, and attempt to
4  transport, transmit, and transfer monetary instruments or funds
5  from a place in the United States to or through a place outside
6  the United States, knowing that the monetary instruments or funds
7  involved in the transportation, transmission, or transfer
8  represented the proceeds of some form of unlawful activity and
9  knowing that such transportation, transmission, or transfer was
10  designed in whole or in part to avoid a transaction reporting
11  requirement under Federal law, in violation of Title 18, United
12  States Code, Section 1956(a)(2)(B)(ii).
13  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
14       ACCOMPLISHED
15       The objects of the conspiracy were to be accomplished in
16  substance as follows:
17       1.    The Grand Jury re-alleges and incorporates by reference
18  paragraphs 1 through 30 of Section B of Count One setting forth
19  the means of the conspiracy charged in Count One.
20  C.   OVERT ACTS
21       In furtherance of the conspiracy and to accomplish the
22  objects of the conspiracy, defendants F. JIMENEZ, HERRERA, L.
23  BARAJAS, GUSTAVO, JUAN DIEGO, JULIAN, O. FLORES, and VERDUZCO-
24  VILLANUEVA, and others known and unknown to the Grand Jury,
25  committed various overt acts, within the Central District of
26  California and elsewhere, including but not limited to the
27  following:
28       1.    The Grand Jury re-alleges and incorporates by reference

54

paragraphs 1 through 232 of Section C of Count One setting forth

the overt acts of the conspiracy charged in Count One.

COUNT SEVEN

[18 U.S.C. § 1956(a)(2)(A)]

On or about June 14, 2006, in Orange County, within the Central District of California, defendant OLGA LIDIA FLORES knowingly and willfully transported and attempted to transport funds, that is, $60,000 in United States Currency, from a place in the United States, that is, Los Angeles, California, to or through a place outside the United States, that is, Mexico, with the intent to promote the carrying on of specified unlawful activity, that is, a conspiracy to distribute and possess with intent to distribute methamphetamine, a schedule II controlled substance.

COUNT EIGHT

[21 U.S.C. § 843(b)]

On or about March 22, 2006, in Los Angeles County, within the Central District of California, defendant ARMANDO GUZMAN GARCIA, also known as ("aka") Silvestre Garcia, knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of a felony drug offense, that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT NINE

[21 U.S.C. § 843(b)]

On or about April 26, 2006, in Los Angeles County, within the Central District of California, defendant GERARDO GARFIAS, aka Gera, knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of a felony drug offense, that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

## COUNT TEN

[21 U.S.C. § 843(b)]

On or about May 1, 2006, in Los Angeles County, within the Central District of California, defendant VICTOR MANUEL VILLAR knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of a felony drug offense, that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

59

COUNT ELEVEN

[21 U.S.C. § 843(b)]

On or about June 7, 2006, in Los Angeles County, within the Central District of California, defendant OLGA LIDIA FLORES knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of a felony drug offense, that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT TWELVE

[21 U.S.C. § 843(b)]

On or about June 13, 2006, in Los Angeles County, within the Central District of California, defendant OLGA LIDIA FLORES knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of a felony drug offense, that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT THIRTEEN

[21 U.S.C. § 843(b)]

On or about June 13, 2006, in Los Angeles County, within the Central District of California, defendant SERGIO SANCHEZ ARMENTA, also known as ("aka") Januario, aka Gordo, knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of a felony drug offense, that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT FOURTEEN

[21 U.S.C. § 843(b)]

On or about June 15, 2006, in Los Angeles County, within the Central District of California, defendant LUZ MAGANA, also known as ("aka") Luz Magana Osegura, aka Lourdes Magana Oseguera, aka Tia, knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of a felony drug offense, that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT FIFTEEN

[21 U.S.C. § 843(b)]

On or about June 16, 2006, in Los Angeles County, within the Central District of California, defendant RAYMOND CARDENAS, also known as ("aka") Jefe, aka Ramon, knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of a felony drug offense, that is, conspiracy to distribute and possess with intent to distribute methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT SIXTEEN

[21 U.S.C. § 853]

1.    Pursuant to Title 21, United States Code, Section 853, defendants FERNANDO LOPEZ JIMENEZ, also known as ("aka") Arnulfo Vasquez Barajas, aka Leo ("F. JIMENEZ"), GUILLERMO HERRERA, aka Guillermo Tena ("HERRERA"), LUCILA BARAJAS ("L. BARAJAS"), GUSTAVO last name unknown ("LNU") ("GUSTAVO"), JUAN DIEGO, aka El Patron ("JUAN DIEGO"), JULIAN LNU, aka Primo, aka Cousin ("JULIAN"), ALEJANDRO DOMINGUEZ-GOMEZ, aka Alex ("A. DOMINGUEZ-GOMEZ"), MARIO PINA, aka Jorge Ascencion Hernandez, aka Mariano Trujillo ("PINA"), OLGA LIDIA FLORES ("O. FLORES"), JESUS JAVIER THOMAS GONZALEZ, aka Javier ("GONZALEZ"), SERGIO SANCHEZ ARMENTA, aka Januario, aka Gordo ("ARMENTA"), MARTIN VERDUZCO-VILLANUEVA ("VERDUZCO-VILLANUEVA"), ARMANDO GUZMAN GARCIA, aka Silvestre Garcia ("GARCIA"), GERARDO GARFIAS, aka Gera ("GARFIAS"), VICTOR MANUEL VILLAR ("VILLAR"), MARCOS GONZALEZ ROMERO, aka Marco Romero Gonzalez, aka Guadalupe Ramirez, aka Tortas, aka Tony ("ROMERO"), JUAN LNU ("JUAN LNU"), ISAAC LNU ("ISAAC"), RAYMOND CARDENAS, aka Jefe, aka Ramon ("CARDENAS"), LUZ MAGANA, aka Luz Magana Osegura, aka Lourdes Magana Oseguera, aka Tia ("MAGANA"), and SAMMY LNU ("SAMMY") shall forfeit to the United States the following property:

      a.    All right, title, and interest in any and all property --

         (i)   constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses described in Counts One through Five and Eight through Fifteen; and

65

          (ii)  any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense, including, but not limited to $60,000 in U.S. Currency seized on June 14, 2006 in Orange County, California from defendant O. FLORES.

     b.    A sum of money equal to the total value of the property described in paragraph 1(a)(i), representing the amount of proceeds obtained as a result of the offenses, less the value of actual proceeds forfeited, for which the defendants are jointly and severally liable.

    2.    Pursuant to Title 21, United States Code, Section 853(p), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 1, if, by any act or omission of the defendant, the property described in paragraph 1, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

COUNT SEVENTEEN

[18 U.S.C. § 982]

1.    Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of any of the offenses set forth in either Count Six or Count Seven of this Indictment shall forfeit to the United States the following property:

        a.    All right, title, and interest in any and all property involved in such offense in violation of Title 18, United States Code, section 1956, and all property traceable to such offense, including the following:

            (i)   all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of section 1956;

            (ii)  all commissions, fees and other property constituting proceeds obtained as a result of those violations; and

            (iii) all property used in any manner or part to commit or to facilitate the commission of those violations.

        b.    A sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted.  If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

67

1    2.   Pursuant to Title 21, United States Code, Section

2  853(p), and Title 18, United States Code, Section 982(b), each

3  defendant, if so convicted, shall forfeit substitute property, up

4  to the value of the amount described in paragraph 1, if, by any

5  act or omission of the defendant, the property described in

6  paragraph 1, or any portion thereof, cannot be located upon the

7  exercise of due diligence; has been transferred, sold to or

8  deposited with a third party; has been substantially diminished

9  in value; or has been commingled with other property that cannot

10 be divided without difficulty.

11                                   A TRUE BILL

12

13                                   _/S/_

14                                   Foreperson

15 THOMAS P. O'BRIEN
   United States Attorney
16

17

   CHRISTINE C. EWELL
18 Assistant United States Attorney
   Chief, Criminal Division
19

   TIMOTHY J. SEARIGHT
20 Assistant United States Attorney
   Chief, OCDETF Section
21

   ROB B. VILLEZA,
22 Assistant United States Attorney,
   Deputy Chief, OCDETF Section
23

   MICHAEL S. LOWE
24 Assistant United States Attorney
   OCDETF Section
25

26

27

28

                            68